WILLIAM ROEBER, RESPONDENT, *v.* PETER BOWE, AS
SHERIFF, ETC., APPELLANT.

*Sale with intent to defraud creditors — when a purchaser for full value, who has notice of the vendor's fraudulent intent, does not acquire a good title.*

One Carpenter, being deeply in debt, offered to sell to the plaintiff, to whom he was indebted to the extent of $800, his whole stock of goods for $1,800, the amount of the debt to be applied upon the purchase-price, and the plaintiff agreed to purchase at that price, provided there was sufficient stock when the inventory was taken. The plaintiff took possession, and claimed to have subsequently paid some $700 worth of debts for Carpenter. The stock was inventoried at $1,433.52. The defendant, the sheriff, having thereafter seized and sold the stock as the property of Carpenter, under a judgment recovered against him the plaintiff brought this action to recover the damages thereby sustained. Upon the trial the defendant's counsel requested the court to charge that a purchaser for full value was not protected in buying goods sold to hinder, delay or defraud creditors, if he had notice of the fraudulent intent of the seller. The court refused so to charge, but modified it by adding the words "and participated in such intent."
*Held*, that the court erred in refusing to charge as requested.
*Dudley* v. *Danforth* (61 N. Y., 626) criticised and distinguished.

APPEAL by the defendant from a judgment in favor of the plaintiff, entered upon the verdict of a jury, rendered at circuit; and also

from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried, upon the ground that the verdict was excessive and against the evidence.

The action was brought to recover damages against the defendant for having, as sheriff of New York county, taken and sold the plaintiff's goods to satisfy a judgment against one George W. Carpenter.

The defendant alleged that the goods belonged to Carpenter.

Evidence was given tending to show that the goods consisted of the stock and fixtures of a grocery store at 156 Reade street; that Carpenter had formerly been the owner and proprietor thereof; that he had become deeply involved in debt; that he had borrowed money from time to time of the plaintiff, until March 13, 1880, when his indebtedness to plaintiff amounted to $800. He then proposed to sell his stock and fixtures outright to the plaintiff for $1,800, allowing his indebtedness of $800 to apply on account. The plaintiff agreed to buy at that price, "providing there was sufficient stock to show in the store when we should take the inventory." A bill of sale was thereupon executed and delivered, expressing the nominal consideration of $1,800, and four days later it was filed by the plaintiff in the registrar's office. The plaintiff claimed that he and an assistant immediately went down and took an inventory of the stock and fixtures, placing opposite to each article a sum estimated or agreed upon as its value, resulting in a total of $1,435.52.

He also claimed that he took immediate possession of the store stock and fixtures, and placed one Roe in charge as his agent, to keep possession for him and to supervise and carry on the business; and also retained in his employ Carpenter, at a salary of twelve dollars a week.

In addition to the $800 previously loaned to Carpenter, plaintiff claimed that, after taking possession of the store, he paid numerous debts of Carpenter to divers persons, amounting in the aggregate to about $700 more, or $1,500.57 in all, and then proceeded to replenish the stock at his own credit and expense, and to carry on said business for his own use.

*Aaron J. Vanderpoel*, for the appellant.

*Edward P. Wilder*, for the respondent.

BRADY, J.:

This action was brought to recover damages against the defendant for having, as a sheriff of the county of New York, taken and sold the plaintiff's goods to satisfy a judgment against George W. Carpenter, who was the plaintiff's vendor. The defendant set up a plea of justification alleging the title of the goods to be in Carpenter, notwithstanding the claim asserted by the respondent.

Upon the trial, and at the conclusion of the judge's charge, the court was requested to instruct the jury that a purchaser for full value was not protected on buying goods sold to hinder, delay or defraud creditors if the purchaser had notice of the intent on the part of the seller ; which the court refused to do as solicited, and modified it by introducing the words " and participated in such intent."

The statute provides that every conveyance or assignment of goods or *choses in action* made with intent to hinder, delay or defraud creditors as against the persons so hindered, delayed or defrauded, shall be void. (3 R. S. [6th ed.], p. 145.) This is a broad and sweeping provision, and if it stood alone the result might be that the fraudulent intent of the grantor or assignor would render every such transfer void, no matter how innocent the purchaser might be ; and hence, by a subsequent section of the statute, it was declared that the previous chapter should not be construed in any manner to affect or impair the title of a purchaser in good faith for a valuable consideration, unless it should appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such purchaser. (3 R. S. [6th ed.], p. 146, § 5.)

The effect of these two provisions seems to be that if a purchase be made by a person having notice of the fraudulent intent of the vendor, he is not entitled to absolute protection, and his title may, therefore, be affected or impaired, even although he may have bought in good faith and for a valuable consideration. This view has been sustained by the authorities. (*Pringle* v. *Phillips*, 5 *Sand.*, 157 ; *Danforth* v. *Dart*, 4 Duer, 101 ; *Baker* v. *Bliss*, 39 N. Y., 70.)

If a rule declaratory of this effect had been expressed upon the trial it may be that the jury would, nevertheless, have found for the plaintiff, but that does not affect the right of the defendant to have it charged if it be the law. The court, however, refused

to recognize it and instructed the jury that a purchaser for full value was not protected in buying goods sold to hinder, delay or defraud creditors, if he had notice of the intent on the part of the seller and participated in such intent; and this theory of participation was expressed in the instructions given the jury throughout the observations of the learned judge. The defendant duly excepted to the refusal to grant the request made and to the charge as given.

His interpretation of the effect of the statute, to which reference has been given, seems to be predicated of the recent case of *Dudley* v. *Danforth* (61 N. Y., 626). In that case the referee found in substance upon conflicting evidence that the purchase and sale were made in good faith for the purpose of paying to plaintiffs an honest debt owed them by the judgment debtor. The defendant asked the referee to find among other things that the alleged sale and transfer were made with intent on the part of the judgment debtor to hinder and delay his creditors, and that the plaintiffs had previous notice of such intent on the part of the judgment debtor. This the referee refused to find, and it was held, that assuming the evidence would have justified such a finding it would not have invalidated the purchase without the further finding that the plaintiffs participated in such intent. The case is not reported in full although it involves a very important principle, and the precise facts are not stated. But the finding of the referee was, however, that the sale was made for the purpose of paying plaintiffs an honest debt. In the syllabus of the case the rule declared is stated to be that where the vendee purchases property for the purpose *solely* of receiving payment of an honest debt, the fact that the vendor sold with intent to hinder and delay his creditors does not make the sale void as to such creditors; and this although the vendee had knowledge of such intent. It must be made to appear that the vendee participated in the fraudulent intent; and this was doubtless in conformity to the opinion expressed, but which is not published.

It may very well be that the court proceeded in that case upon the theory that the creditor might accept payment of his debt by way of purchase for a fair consideration, even though he knew of a general design on the part of his debtor to dispose of his property to defraud his creditors. This would not be such a purchase as is contemplated by the statute. It would be the acceptance of some-

thing by way of barter in discharge of the indebtedness. Of course, if the debtor treated all of his creditors in the same way his general design would fail because he would be disposing of the property at fair prices and for legal purposes.

It cannot justly be regarded as hypercritical to assert that when a purchase is made by a creditor with knowledge, of the vendor's fraudulent purpose of hindering, delaying or defrauding his creditors, of more than enough to pay the debt due, he necessarily participates in the fraud by thus assisting in its accomplishment. He aids in the fraudulent intent and the sale for a fraudulent purpose because he buys the property, which is a part of the scheme. In the case referred to it seems, however, from the report and the referee so found, that the sale was made in good faith and for the purpose of paying an honest debt, and for the *sole* purpose of paying the debt. In this case, as already stated, there was a sale of more property than was sufficient to pay the plaintiff's debts, and it happens, therefore, that the purchase was not made solely to accomplish such payment, but to continue the business in which the judgment debtor had been engaged, which was done, and the judgment debtor himself employed in the business by the plaintiff. The cases are, therefore, dissimilar, and this case is not controlled by the adjudication to which reference has been made. The sale here was not made solely for the purpose of paying the plaintiff's debts.

The doctrine of the case of *Dudley* v. *Danforth* (*supra*), as it seems to be in conflict with the statute itself on the subject of fraudulent transfer should be restricted to cases precisely similar, and not extended beyond them.

For these reasons the judgment should be reversed and a new trial ordered, with costs to abide the event.

DAVIS, P. J., concurred.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

Judgment reversed, new trial granted, costs to abide event.